IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BECKY MUSSAT-WHITLOW,

        Plaintiff,

v.                                                         CIVIL ACTION NO.   1:25-cv-00263

WINSTON-SALEM STATE UNIVERSITY,

        Defendant.

**MEMORANDIM OPINION AND ORDER**

Pending before the Court is Defendant Winston-Salem State University's ("WSSU" or "Defendant") Motion to Dismiss.[1] (ECF No. 12.) For the reasons discussed below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.    BACKGROUND

This matter arises from Plaintiff's employment at WSSU as Director of Institutional Assessment and Research. (*See generally* ECF No. 11.) The Amended Complaint alleges that Plaintiff started working at WSSU around 1999, and from 2009 to January of 2023, she maintained her position as Director of Institutional Assessment and Research. (*Id.* at 3, ¶¶ 8, 60.) As Director, Plaintiff asserts that she "lead[] institutional effectiveness efforts . . . report[ed] data . . .

---

[1] Also pending is Defendant's first motion to dismiss, (ECF No. 12), but this motion became moot by the filing of Plaintiff's amended complaint, (ECF No. 11), and is therefore **DENIED**. Additionally, Plaintiff's motion for extension of time to file a response, (ECF No. 27), and Defendant's consent motion for extension of time to file a reply, (ECF No. 29), are likewise moot because Plaintiff filed a timely response, (ECF No. 28), and Defendant filed a timely reply, (ECF No. 30). As such, they are **DENIED**. Finally, for reasons appearing to the Court, Defendant's Motion to Stay Discovery, (ECF No. 25), is **DENIED**.

1

and created mechanisms and procedures to . . . make institutional improvements." (*Id.*, ¶¶ 9–11.) Plaintiff alleges that WSSU continually gave her raises or additional compensation, never placed her on a performance or improvement plan, and never informed her of any unsatisfactory performance. (*Id.*, ¶¶ 12–14.) Plaintiff's work environment changed in 2022, when WSSU appointed Dr. Tony Artimisi as Plaintiff's interim supervisor. (*Id.*, ¶¶ 15–16.) Plaintiff described a strained relationship with Dr. Artimisi throughout her complaint, alleging that he sent a false email about her and made inappropriate and unwelcome comments toward her. (*See id.* at 3–4, 5, ¶¶ 17–21, 32.) In 2022, Plaintiff also had some health concerns and allegedly took FMLA leave twice to address those concerns. (*Id.* at 7, 8 ¶¶ 39, 44.)

On October 22, 2022, Plaintiff took her first FMLA leave for her torn meniscus and foot. (*Id.* at 7, ¶ 39.) Dr. Artimisi allegedly found "no problem" with Plaintiff taking this leave and told Plaintiff to file the paperwork "when she knew the specific dates." (*Id.* at 5, ¶ 28.) Yet, "around the same time" Dr. Artimisi allegedly sent a "vague and false" email that Plaintiff "*interrupt[ed] him during a meeting.*" (*Id.* at 6, ¶ 32 (emphasis in original).) When Plaintiff returned in-person, she alleges that she experienced increased "negative age-related comments" and that her "work environment became more hostile." (*Id.* at 7, ¶ 40.) According to Plaintiff, Defendant started restricting her from meetings, updates, deadlines, and work-related tasks, despite her routine attempts to gather information. (*Id.*, ¶¶ 41–42.) Also, in the months preceding her termination, Defendant's employees allegedly asked questions and made jokes about her age, physical, and mental health. (*Id.* at 9, ¶¶ 52–57.)

From December 19, 2022, to January 2, 2023, Plaintiff took her second FMLA leave. (*Id.* at 8, ¶ 44.) Plaintiff alleges that during this time she was hospitalized for a mental health condition

2

and "diagnosed with Post-Traumatic Stress Disorder." (*Id.* at 7, ¶ 43.) According to Plaintiff, Defendant's leadership and Dr. Artimisi were aware of Plaintiff's hospitalization and FMLA leave. (*Id.* at ¶ 45.) When Plaintiff returned, she alleged that she could perform her job "without restriction" but "it was clear that she was again treated differently than before" she took her FMLA leave. (*Id.* at 8, ¶ 47.) For example, Plaintiff alleges that on January 19, 2025, Defendant announced, without any advanced notice to Plaintiff, that its Institutional Assessment and Research Office—which Plaintiff directed—would be relocated. (*Id.*, ¶ 48.) Following this announcement, Plaintiff asserts that she repeatedly attempted to contact Dr. Artimisi about her employment but received no response. (*Id.*, ¶¶ 50–51.)

Plaintiff also allegedly intended to take a third FMLA leave for an upcoming eye surgery because she is "severely near-sighted" and suffers from migraines. (*Id.* at 9, ¶ 54.) However, Defendant allegedly terminated Plaintiff before she could take this additional leave. (*See id.*, ¶¶ 55–56.)

On January 30, 2023, Defendant terminated Plaintiff. (*Id.* at 10, ¶ 60.) Plaintiff asserts that her termination "was in retaliation for engaging in protected activity" including her rights under the FMLA.

Consequently, Plaintiff filed suit in the Superior Court of Forsyth County, North Carolina. (ECF No. 1, at 1.) The Amended Complaint asserts three Counts in violation of N.C. Gen. Stat. § 143-422.1 *et. seq.*, known as the North Carolina Equal Employment Practices Act ("NCEEPA"), these are (1) Disability Discrimination, (2) Age Discrimination, and (3) Sex Discrimination. (ECF No. 11 at 12–14.) The fourth and final Count alleges interference and retaliation in violation

of the FMLA. (*Id.* at 14–16.) Defendant removed the case to this Court on April 7, 2025. (ECF No. 1.)

Defendant then filed the pending Motion to Dismiss on June 18, 2025, (ECF No. 12), Plaintiff filed a response, (ECF No. 14), and Defendant filed a reply, (ECF No. 18). As such, the motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

It is axiomatic that a court must find it has jurisdiction before determining the validity of any claims brought before it. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "The burden of showing the existence of subject matter jurisdiction rests on the plaintiff." *Adkins v. United States*, 923 F. Supp. 2d 853, 857 (S.D. W. Va. 2013) (citation omitted). "If the plaintiff fails to meet this burden, then the claim must be dismissed." *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005) (citing *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001)).

Here, Defendant argues that Plaintiff's claims under the NCEEPA should be dismissed under Rule 12(b)(1), 12(b)(2), and/or 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 13 at 6.) The Court addresses these rules below.

### A. Federal Rule of Civil Procedure 12(b)(1)

It is firmly established that the Eleventh Amendment bars an individual citizen from bringing a suit in federal court against a sovereign state. *Roach v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 74 F.3d 46, 48 (4th Cir. 1996) (citation omitted); *see also Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990) (construing the Eleventh Amendment "to establish that a non-consenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state" (internal quotation marks and citation omitted)). While sovereign

immunity is "not a true limit on the subject-matter jurisdiction of federal courts, the Eleventh Amendment is a block on the exercise of that jurisdiction." *Id.* (internal quotation marks and citations omitted). "Given this nexus between subject matter jurisdiction and sovereign immunity, the Fourth Circuit has not yet resolved whether a motion to dismiss based on sovereign immunity is properly considered pursuant to Rule 12(b)(1) or Rule 12(b)(6)." *A.M. v. Demetro*, No. 2:22-00421, 2024 WL 218139, at *1 (S.D. W. Va. Jan. 19, 2024) (citation omitted). Still, "District courts within the Fourth Circuit have generally considered this immunity defense under Rule 12(b)(1)." *Smith v. Lanier*, No. 1:20CV750, 2022 WL 903140, at *4 (M.D.N.C. March 28, 2022); *see also e.g.*, *Hutto v. S.C. Ret. Sys.*, 899 F. Supp. 2d 457, 466 (D.S.C. 2012); *Beckham v. AMTRAK*, 569 F. Supp. 2d 542, 547 (D. Md. 2008); *Cornell v. W. Va. Div. of Corr. & Rehab.*, No. 2:24-CV-00120, 2024 WL 4368991, at *3 (S.D. W. Va. Oct. 1, 2024) (quoting *Skaggs v. W. Reg'l Jail*, No. 3:13-3293, 2014 WL 66645, at *4 (S.D. W. Va. Jan. 8, 2014)). This Court will likewise address Defendant's immunity defense for the NCEEPA under Rule 12(b)(1).

Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: (1) a facial attack or (2) a factual attack. *See Evans v. United States*, 105 F.4th 606, 615 (4th Cir. 2024). As is relevant here, under a facial attack, "the defendant contends that the allegations in the complaint are insufficient to confer subject-matter jurisdiction." *Id.* (citing *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). In such a case, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Kerns*, 585 F.3d at 192 (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). Thus, "the facts in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.* However, before giving allegations the presumption

5

of truth, the court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Saunders v. Jividen*, No. 2:21-cv-00250, 2024 WL 3307849, at *3 (S.D. W. Va. May 24, 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Accordingly, this Court will address Defendant's immunity defense under Rule 12(b)(1).

### B. *Federal Rule of Civil Procedure 12(b)(6)*

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle her to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Iqbal*, 556 U.S. at 678. Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. The Court will address Plaintiff's FMLA claims

6

under Rule 12(b)(6).

## III. DISCUSSION

Defendant claims it is entitled to sovereign immunity against Plaintiff's wrongful discharge[2] claims arising from the NCEEPA.[3] (ECF No. 13 at 6–10.) Then, Defendant alleges that Plaintiff's claims under the FMLA fail. (ECF No. 13 at 10–14.) The Court will address Defendant's sovereign immunity claim first.

### A. *Sovereign Immunity*

Under the Eleventh Amendment "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State[.]" U.S. Const. Amend. XI. "Even though the Amendment 'by its terms . . . applies only to suits against a State by citizens of another State,'" the Supreme Court has "repeatedly held that this immunity also applies to unconsented suits brought by a State's own citizens." *Tennessee v. Lane*, 541 U.S. 509, 517 (2004) (quoting *Bd. of Trs. Of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)). This amendment "guarantee[s]" that "nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trs. of Univ. of Al. v. Garrett*, 531 U.S. 356, 363 (2001). In other words,

---

[2] Before even raising sovereign immunity as a defense, Defendant asserts that there is no private right of action under the NCEEPA. (ECF No. 13 at 6–7.) Still, the Fourth Circuit, when addressing claims by plaintiffs that arise under the NCEEPA, has held that the NCEEPA "appl[ies] to 'common law wrongful discharge claims[.]'" *McLean v. Patten Communities, Inc.*, 332 F.3d 714, 720 (4th Cir. 2003) (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000)). This Court has also recognized that a plaintiff may "bring a claim for wrongful discharge in violation of the NCEEPA." *See, e.g., Howell v. N.C. Cent. Univ.*, No. 1:16CV576, 2017 WL 2861133, at *13 (M.D.N.C. July 5, 2017). Plaintiff's present claims under the NCEEPA are thus construed as wrongful discharge claims.

[3] The parties do not dispute that Defendant cannot raise sovereign immunity as a defense against Plaintiff's FMLA claims. Under N.C. Gen. Stat. § 143- 300.35, the sovereign immunity of North Carolina is waived to allow "State employees . . . to maintain lawsuits . . . under . . . The Family and Medical Leave Act." Thus, Defendant's sovereign immunity defense is only relevant with respect to Plaintiff's three causes of action that arise under the NCEEPA.

7

absent waiver or Congressional abrogation, the Eleventh Amendment protects a State from private suit in federal court. *See id.*

A statutory "waiver of sovereign immunity must be unequivocally expressed in statutory text." *Peck v. United States DOL*, 996 F.3d 224, 229 (4th Cir. 2021) (citations omitted). The test for determining whether a state has waived immunity "is a stringent one." *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241 (1985). "A state statutory or constitutional provision will be found to constitute a waiver of Eleventh Amendment immunity only when it 'specif[ies] the State's intention to subject itself to suit in federal court' in 'the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.'" *In re Sec'y of Dep't of Crime Control & Pub. Safety*, 7 F.3d 1140, 1145 (4th Cir. 1993) (quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305–06 (1990)).

According to Plaintiff, Defendant waived its sovereign immunity in two separate ways, first, through N.C. Gen. Stat. § 143-300.35, and second, through the purchase of liability insurance. (ECF No. 11 at 2, ¶ 6.) In response, Defendant asserts that Plaintiff's wrongful discharge claim under the NCEEPA is not covered by N.C. Gen. Stat. § 143-300.35. (ECF No. 13 at 8.) Defendant also asserts that even if WSSU purchases insurance, "the purchase of such insurance . . . by a public university does not effect a waiver of immunity as a matter of law." (ECF No. 18 at 3.) Defendant is correct, sovereign immunity bars Plaintiff's claims under the NCEEPA.

Here, Plaintiff cannot successfully use N.C. Gen. Stat. § 143-300.35 to argue that Defendant waived its sovereign immunity against NCEEPA claims. This statute allows a state employee to maintain a lawsuit against the state in four discrete instances, namely, under the Fair Labor Standards Act, the Age Discrimination in Employment Act, the Family Medical Leave Act,

and the Americans with Disabilities Act. *Id.* Yet the statute does not make any mention of the NCEEPA. The Court will not imply waiver where it clearly does not exist. *See Peck v. United States DOL*, 996 F.3d 224, 229 (4th Cir. 2021) (finding waiver must be "unequivocally expressed" in a statute"). Thus, Defendant has not waived its sovereign immunity under N.C. Gen. Stat. § 143-300.35.

Next, Plaintiff's allegation that Defendant waived sovereign immunity through the purchase of liability insurance also proves unavailing. In support, Plaintiff argues that Defendant's arguments about immunity are too "conclusory" at the motion to dismiss stage because they are not "supported by any attached or incorporated exhibits" to their filings. (ECF No. 14 at 11.) To the extent that Plaintiff takes issue with Defendant raising sovereign immunity at the motion to dismiss stage, this issue can be raised "at any time, even sua sponte." *McCray v. MD. DOT*, 741 F.3d 480, 483 (4th Cir. 2014). As to Plaintiff's assertion that Defendant's arguments are conclusory because they are unsupported by exhibits, Defendant does not need exhibits because its immunity can be demonstrated as a matter of law, despite its alleged purchase of liability insurance.

North Carolina's waiver statute for insurance liability states that the "[p]urchase of insurance pursuant to this subsection waives the *county's* governmental immunity, to the extent of insurance coverage, for any act or omission occurring in the exercise of a governmental function." N.C. Gen. Stat. § 153A-435(a) (emphasis added). This statute waives the governmental immunity of a county, but it cannot be construed to waive the sovereign immunity of the State and *all* its institutions, like WSSU. *See Alston v. N.C. A&T State Univ.*, 304 F. Supp. 2d 774, 783–84 (M.D.N.C. 2004) (finding that under North Carolina law, counties and municipalities may waive

9

liability through the purchase of insurance, but North Carolina has retained sovereign immunity for claims against state institutions); *see also Sossamon v. Texas*, 563 U.S. 277, 284–85 (2011) ("Waiver may not be implied . . . [and must be] strictly construed in favor of the sovereign"). Thus, Defendant's alleged purchase of insurance does not result in waiver of its sovereign immunity.

Accordingly, Defendant's motion to dismiss as to Counts One, Two, and Three is **GRANTED**.[4]

### B. The FMLA

As to Plaintiff's FMLA claims, Defendant argues that Plaintiff's retaliation and interference claims under the FMLA fail. (ECF No. 13 at 10–14.)

Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" under the FMLA. 29 U.S.C. § 2615(a)(1). "The FMLA creates two interrelated, substantive employee rights: first, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to . . . [her] job after using protected leave." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001) (citing 29 U.S.C. §§ 2612(a), 264(a)). "To preserve the availability of these rights, and to enforce them, the FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act[.]" *Strickland v. Water Works &*

---

[4] Defendant argues that Plaintiff's NCEEPA claims should be dismissed under Rules 12(b)(1), 12(b)(2) and/or 12(b)(6). (*See* ECF No. 13 at 6.) Since the Court dismisses these claims under rule 12(b)(1) and 12(b)(6) it is unnecessary to address jurisdiction under 12(b)(2).

*Sewer Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001) (citations omitted). Plaintiff brings both an interference claim and a retaliation claim. The Court first turns to her interference claim.

1. Interference

To bring a successful interference claim under the FMLA an employee must "demonstrate that (1) [s]he is entitled to an FMLA benefit; (2) h[er] employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015). The FMLA leave benefit entitles employees to "a total of 12 workweeks of leave during any 12-month period" for "a serious health condition that makes the employee unable to perform the functions of [her] position." 29 U.S.C. § 2612(a)(1)(D). The FMLA is narrow in scope and application, so certain requirements must be met for an employee to receive benefits under the FMLA. *See Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 738–39 (2003) (discussing the limitations Congress placed on the FMLA).

For instance, an employee must provide thirty days' notice when her leave "is foreseeable based on planned medical treatment." 29 U.S.C. § 2612; *see also Hibbs*, 538 U.S. at 739 ("[e]mployees must give advance notice of foreseeable leave"); *Rhoads v. FDIC*, 257 F.3d 373, 382 (4th Cir. 2001) ("An employee is mandated to provide notice to her employer when she requires FMLA leave"). Notice "make[s] the employer *aware* that the employee needs FMLA-qualifying leave" and includes "the anticipated *timing* and *duration* of the leave." *Rhoads*, 257 F.3d at 382–83 (emphasis added) (quotations and citation omitted). Additionally, while the employer has a "responsibility" to "inquire further about whether the employee is seeking FMLA leave" it arises only "once the employer is on notice of the employee's needs." *Hannah P. v.*

11

*Coats*, 916 F.3d 327, 346 (4th Cir. 2019) (quoting *Dotson v. Pfizer*, 558 F.3d 284, 295 (4th Cir. 2009)).

Here, the parties' arguments fall under the second element. Defendant asserts that "Plaintiff has not alleged that WSSU 'denied'—or otherwise hindered—any request she made for medical leave." (ECF No. 18 at 4.) Plaintiff argues that Defendant interfered with her ability to take protected leave to have eye surgery, which she contends Defendant was aware of because Defendant's employees allegedly joked about her need for eye surgery. (*See* ECF No. 14 at 15.) However, Plaintiff's interference claim fails because she never gave Defendant notice of her intended leave.

Plaintiff's complaint is void of any assertion that she actually notified Defendant about her alleged intended leave for eye surgery or told Defendant when and how long she would need to take leave. At the very least,[5] Plaintiff needed to provide this information to Defendant so that it could have notice of her leave. Plaintiff's allegation that she "intended" an upcoming eye surgery is not enough to plausibly allege Defendant had notice of her intent to take a third FMLA leave. (ECF No. 11 at 9, ¶¶ 56.) Indeed, the complaint provides no indication that Plaintiff informed Defendant *when* or for *how long* she would need to take leave for her eye surgery. *Compare Rhoads*, 257 F.3d at 378 (assuming that employee provided adequate notice when she called her supervisor to inform him that she needed to take leave for a week) *and Hannah P.*, 916 F.3d at 346 (finding the employee gave sufficient notice when she told her employers that "her psychiatrist recommended that she take four weeks of medical leave") *with Brushwood v. Wachovia Bank,*

---

[5] Under the statute, Plaintiff likely needed to provide a thirty-day advance notice to Defendant because her leave was foreseeable. *See* 29 U.S.C. § 2612; (ECF No. 13) (Plaintiff "suffers from migraines along with vision issues" and "intended" an "upcoming eye surgery to . . . alleviate those issues.").

12

*N.A.*, 520 Fed. App'x 154, 157–58 (finding that the employee failed to provide notice because she did not inform the employer she needed leave for "three full consecutive calendar days").

Plaintiff does allege that that Defendant was "aware of" and "on notice" of her "protected leave[,]" (ECF No. 11 at 15, ¶ 100), but without more facts, this allegation reflects nothing more than "a formulaic recitation of [an] element[] of a cause of action[.]" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Thus, Plaintiff fails to plausibly allege interference because she never gave Defendant notice of her intended leave.[6]

Accordingly, Plaintiff's FMLA interference claim fails.

2. Retaliation

To bring a successful FMLA retaliation claim, "a plaintiff can either (1) produce direct and indirect evidence of retaliatory animus or (2) demonstrate intent by circumstantial evidence, which [courts] evaluate under the framework established for Title VII cases in *McDonnell Douglas*." *Fry v. Rand Constr. Corp.*, 964 F.3d 239, 244 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2595 (2021) (internal quotations and citations omitted). To state an FMLA retaliation claim above the speculative level, a plaintiff proceeding under the *McDonnell Douglas* framework must plausibly allege that (1) "that [s]he engaged in protected activity," (2) "that the employer took

---

[6] Additionally, Plaintiff's interference claim based on her termination also fails. Plaintiff alleges that "Defendant interfered with Plaintiff's benefits and protections provided under the FMLA by . . . terminating her employment[.]" (ECF No. 11 at 15 ¶ 103.) Because Plaintiff's complaint fails to allege any facts indicating that she provided proper notice to Defendant about FMLA leave for her eye surgery, the only other leave she pleaded in her complaint is leave Defendant granted. So, her interference theory is not that she was prohibited from taking her leave, only that she was disciplined for doing do. Consequently, her FMLA claims for retaliation and interference effectively merge into one claim, which sounds in retaliation, not interference. Thus, because Plaintiff's interference claim mirrors her retaliation claim, her interference claim based on her termination fails as a matter of law. *See, Hawkins v. BBVA Compass Bancshares, Inc.*, 613 Fed. App'x 831, 841–42 (11th Cir. 2015) (per curiam) ("Although Plaintiff may have been trying to argue that by firing her, Defendant 'denied' her FMLA leave to which she was entitled (working only half-days), her interference claim is largely a clone of her FMLA retaliation claim.").

adverse action against h[er], and" and (3) "that the adverse action was causally connected to the plaintiff's protected activity."  *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006) (internal quotation marks omitted); *Twombly*, 550 U.S. at 555, 557.

Here, Defendant concedes the first element; it is undisputed that Plaintiff engaged in a protected activity.  (*See* ECF No. 13 at 14).  However, Defendant argues that Plaintiff cannot plausibly allege elements two and three.  As addressed below, she can.

Concerning element two, "[a]n adverse action is one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).  Further, the Plaintiff must plausibly allege "that a reasonable employee would have found the challenged action materially adverse," meaning, the action "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Id.* (quoting *Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006)).

Here, Defendant first disputes Plaintiff's allegation that she experienced other adverse actions in addition to her termination.  (ECF No. 18 at 6–7.)  Plaintiff alleges the other adverse actions she experienced involved "change[s] in the terms and conditions of her employment when returning from medical leave prior to her" termination.  (ECF No. 14 at 17.)  Plaintiff is mistaken, the only adverse action she plausibly alleged is her termination.

Plaintiff's complaint alleges that after taking protected leave she started experiencing negative comments from her coworkers, she was isolated from meetings and events, and she had less communication with her supervisors.  (ECF No. 11 at 7–10, ¶¶ 40, 47, 53, 57–58.)

14

Noticeably, though, these allegations are not equivalent to hiring, firing, failing to promote, and reassignment with significantly different responsibilities. *See Hoyle*, 650 F.3d at 337; *see also Jensen-Graf v. Chesapeake Employers' Ins. Co.*, 616 Fed. App'x 596, 598 (4th Cir. 2015) (per curiam) ("She has failed to allege that she received lower pay, was demoted, was passed over for a promotion, failed to receive a bonus, or given significantly different responsibilities"). Thus, Plaintiff experienced only one adverse action: her termination.

Next, under element three, "[w]hile evidence as to the closeness in time 'far from conclusively establishes the requisite causal connection, it *certainly satisfies* the less onerous burden of making a prima facie case of causality.'" *Yashenko*, 446 F.3d at 551 (quoting *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)) (emphasis added). The burden is even lower at the motion to dismiss stage, where the Plaintiff need only plausibly allege a causal connection above the speculative level. *Twombly*, 550 U.S. at 555, 557.

Here, Defendant argues that Plaintiff "has not alleged any facts that might plausibly support a causal connection" between her termination and her protected leave. (ECF No. 13 at 14.) Conversely, Plaintiff correctly argues that the close temporal proximity here between her return from FMLA leave and her termination is enough to demonstrate causation. (ECF No. 14 at 18.) As Plaintiff alleges, Defendant terminated her employment just twenty-eight days after she took FMLA leave. (ECF No. 11 at 8, 10, ¶¶ 46, 60.). This close temporal proximity raises a fair inference that Defendant acted adversely by firing her less than a month after she returned from engaging in her protected FMLA leave. *See Waag v. Sotera Def. Solutions, Inc.*, 857 F.3d 179, 192 (4th Cir. 2017) ("close temporal proximity between activity protected by the statute and an

15

adverse employment action may suffice to demonstrate causation.") Plaintiff has therefore plausibly alleged the causation element.

Additionally, Defendant cites Fourth Circuit precedent to argue that temporal proximity alone cannot prove causation and further argues that Plaintiff must allege "other facts" sufficient to support a causal link. (ECF No. 18 at 8–9.) Yet, both cases are undoubtedly distinguishable from the present case. Indeed, these cases addressed causation at the summary judgment stage, which places a higher burden on the Plaintiff than the motion to dismiss stage. *See Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 114 (4th Cir. 2021); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 300 (4th Cir. 2006). Also, both cases involve a longer temporal span than the twenty-eight days Plaintiff alleges. *See Roberts*, 998 F.3d at 123 (terminating employee three months after protected activity); *Francis*, 452 F.3d at 302, 309 (terminating employee over two months after protected activity). Accordingly, the Court finds Defendant's argument that these cases require Plaintiff to allege more facts unpersuasive.

Thus, Plaintiff plausibly alleged her retaliation claim.

Accordingly, Defendant's motion to dismiss as to Plaintiff's FMLA claim is **GRANTED** as to Plaintiff's claim under interference and **DENIED** as to Plaintiff's claim under retaliation.

## IV. CONCLUSION

For these reasons, Defendant's Motion to Dismiss, (ECF No. 12), is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claims under Counts One, Two, and Three, are hereby **DISMISSED WITH PREJUDICE**, and as to Count Four, Plaintiff's FMLA claim as to interference is **DISMISSED WITH PREJUDICE**, but her FMLA claim as to retaliation will proceed.

16

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 10, 2026

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE